## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOSEPH A. BARKER, REGIONAL DIRECTOR OF REGION 13 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD                Petitioner<br><br>v.<br><br>REGAL HEALTH AND REHAB CENTER, INC.               Respondent | Civil No.  08 CV 2229<br><br>Judge Grady<br>Magistrate Judge  Cole |

### PETITIONER'S MOTION TO QUASH RESPONDENT'S
### NOTICE OF DEPOSITION

To the Honorable, John F. Grady, District Court Judge of the United States Court for the Northern District of Illinois, Eastern Division:

      Petitioner, Joseph A. Barker, through counsel Jessica Willis Muth and Sylvia L. Taylor, and pursuant to Rule 26(C)(1) of the Federal Rules of Civil Procedure, moves the Court to quash the Notice of Deposition issued by Respondent Regal Health and Rehab Center to Petitioner Joseph A. Barker, and moves for a protective order against any testimony by Director Barker.  Respondent's request is defective in two distinct ways: the evidence sought to be obtained is irrelevant to the issue of whether Section 10(j) injunctive relief is "just and proper" in this case; and, Petitioner's knowledge concern the instant case is protected by the deliberative process privilege which Respondent has failed to show a substantial need.  In support of this Motion, Counsel for Petitioner states the following:

On April 18, 2008, the Petitioner filed a Petition for Temporary Injunctive Relief pursuant to Section 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. Section 160(j), which is based upon a set of unfair labor practice charges filed on January 8, 2008, against Respondent in NLRB Cases 13-CA-44481 and 13-CA-44482 pursuant to 29 U.S.C. Section 160(b).  A hearing before an Administrative Law Judge of the National Labor Relations Board on the merits of these cases is scheduled to commence on May 27, 2008.

The narrow legal issues before the Court in this proceeding are whether there is a likelihood that Petitioner will succeed in proving that Respondent has violated and is violating the Act, 29 U.S.C. Section 151 et seq., (hereafter referred to as the "Act"), and whether Petitioner's requested temporary injunctive relief is "just and proper" .  Pursuant to 28 U.S.C. Section 1657(a) and the Congressional purpose underlying Section 10(j) of the Act this proceeding is to be given expedited consideration by the Court.  A hearing has not been scheduled by the District Court.

Due to the limited legal issues before this Court and that a record upon which the decision on the ultimate merits of these cases will soon be made in the administrative proceeding before the Administrative Law Judge,  Petitioner on April 25, 2008 filed with this Court, a Motion to try the Petition for Injunction on hearing transcript and exhibits developed before the Administrative Law Judge to determine the likelihood that Petitioner will succeed in proving that Respondent has violated the Act as alleged in NLRB Cases 13-CA-44481 and 13-CA-44482. This Court has not yet ruled on Petitioner's Motion.

On May 8, 2008, counsel for Petitioner was served by Respondent with a "Notice of Deposition" with a return date of May 19, 2008.  On the same date, Petitioner was served by Respondent with a "Notice to Produce [Documents] Directed to Petitioner."[1]  The return date for the document request was 30 days from the receipt

---

[1] It is anticipated by Petitioner that, to the extent that is appropriate, the requested documents that are appropriately discoverable will be available to Respondent on or before June 9, 2008.

of the request. Both of Respondent's discovery requests demand the same documents. Petitioner will be providing the documents not privileged on or before the requested release date of June 9, 2008. Copies of each Notice are attached hereto as Petitioner's Exhibits "A" and "B" respectively.

Petitioner concedes that the discovery provisions of the Federal Rules of Civil Procedure apply to the Federal Government. See *U.S. v. Proctor & Gamble*, 356 U.S. 677, 681 (1958). Although the Federal Rules of Civil Procedure contemplate broad discovery and a wide definition of relevancy, Rule 26(b)(1) limits discovery to the production of material that is "reasonably calculated to lead to the discovery of admissible evidence" in the proceeding before the court. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978). District courts may, however, limit discovery upon a showing of good cause. See, e.g., *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984). Further, a party may not discover material that is subject to a valid privilege, absent a showing of substantial need. See *Baldridge v. Shapiro*, 455 U.S. 345, 360 (1982).

The Seventh Circuit holds that to determine whether relief is "just and proper," district courts must evaluate: 1) the likelihood that the petitioner will succeed on the merits; 2) whether the petitioner has an adequate remedy at law and/or would be irreparably harmed if the injunction did not issue; 3) whether the threatened injury to petitioner outweighs the threatened harm an injunction would inflict on defendant; and 4) whether the granting of a preliminary injunction serves the public interest. *National Labor Relations Board v. Electro-Voice, Inc.*, 83 F. 3d 1559 (1996), cert. denied 519

---

At the present time, the Petitioner is compiling and organizing the documents requested by Respondent – including a privilege or Vaughn index pursuant to Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure. These privileged documents will not be provided to the extent that Respondent's Document Request seeks documents that are either privileged by the attorney work product rule, or that essentially deal with, *inter alia*, the scope or adequacy of the investigation conducted in NLRB Cases 13-CA-44481 and 13-CA-44482 by the Board's Regional Office, as well as the mental processes and deliberations of, and communications

U.S. 1055 (1997). The lack of adequate remedy at law and public interest elements must be demonstrated by a preponderance of the evidence. The likelihood of success and balancing of the injuries are evaluated on a "sliding scale," where a strong showing under one element may offset a weaker showing under the other. *Electro-Voice, Inc., Id.* at 1568. In considering these general equitable standards, however, the court must view them through "the prism of the underlying purpose of Section 10(j), which is to protect the integrity of the collective-bargaining process and to preserve the Board's remedial power while it processes the charge."[2]

In addition to the above framework, the Seventh Circuit has recognized that because "depositions of public officials create unique concerns" the depositions must be reasonably calculated to produce or lead to admissible evidence. *Stagman v. Ryan,* 176 F.3d 986, 994-95 (7th Cir. 1999). If not, they are to be quashed. *Id.* (See also, *Ahearn v. Rescare West Virginia,* 208 F.R.D. 565 (2002) (copy attached). Moreover, a party seeking the deposition of a high ranking official should first demonstrate that there is some reason to believe that the deposition will produce or lead to admissible evidence. *Oliveri v. Rodriguez,* 122 F.3d 406, 409-10 (7th Cir. 1997). In *Stagman,* the Seventh Circuit affirmed the district court's decision to refuse to require that the Attorney General of the State of Illinois be deposed. The court did not believe in *Stagman* that the Attorney General's testimony would lead to evidence regarding whether a low-level accountant within the Office of the Illinois Attorney General was terminated for union-related activities when it was clear that the decision had been made by his staff. The court found that deposing the Attorney General "would have served little purpose other than to disrupt 'a busy official who should not be taken away from his work to spend hours or days answering lawyers' questions.'" *Id.* at 995. In short, a party seeking the

---

among, the Petitioner and the Board's General Counsel, 29 U.S.C. Section 153(d), such requests are not properly discoverable.

[2] *Miller v. California Pacific Medical Center,* 19 F.3d 449,(9th Cir. 1994) (en banc) (Ninth Circuit adopted the rationale and standards set forth by the Seventh Circuit in *Kinney v. Pioneer Press*).

deposition of a high ranking official must first demonstrate that there is some reason to believe that the deposition will produce or lead to admissible evidence. *Olivieri*, 122 F.2d at 409-10. In the instant matter, the Respondent has failed to provide such a demonstration.

Petitioner submits that the deposition of the Regional Director is not relevant to any issue in the 10(j) proceeding and cannot be said to produce or lead to any admissible evidence. As a Board official, he was **not** a witness to the events at issue in this case and does not have any first-hand knowledge of any relevant evidence which has not already been made, or will be made, available to Respondent. See, e.g., *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586-587 (D.C. Cir. 1985). The Regional Director is an official of the Board whose participation in the case is merely to act on behalf of the Board. See *Gottfried v. Frankel*, 818 F.2d 485, 491-492 (6th Cir. 1987). In carrying out those official duties, Director Barker was the recipient of information distilled from the investigation of this case by his agents in the Regional Office of the Board. See *NLRB v. Trades Council*, 131 LRRM 2022, 2024 (3d Cir. 1989, opinion of special master) (copy attached). Thus, the deposition of the Regional Director will not disclose any admissible evidence as to whether injunctive relief in this case is "just and proper." It is clear, therefore, that any inquiries pertaining to the likelihood of success on the merits issue are appropriately beyond the scope of questions Respondent could properly address to the Regional Director. All of the evidence which the Board will consider in determining the merits of the unfair labor practice complaint will be contained in the transcript and exhibits of the administrative hearing in which Respondent will fully participate with the full opportunity to cross examine witnesses and review any statements by the witnesses made in the investigation of the unfair labor practice cases.

In view of the total absence of any relevant factual material to be discovered in the testimony of the Regional Director (*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978)), the only information which could be gained by Respondent's

5

deposition would concern which specific facts adduced in the Board's investigation were relied upon, or not relied upon, by the Regional Director in reaching a decision to seek interim injunctive relief. It is inescapable that the deposition would then be seeking to elicit testimony regarding the Regional Director's impressions, opinions, and the weighing of evidence that is part of the Board's investigative and deliberative process. Such areas are not relevant to the issues before the Court. See, e.g., *NLRB v. Whittier Mills Co.*, 123 F.2d 725, 728 (5th Cir. 1941)(finding that Regional Director's beliefs are irrelevant to issues before court); *McLeod v. Local 239, Teamsters*, 330 F.2d 108, 112 (2d Cir. 1964)(Respondent "should have attempted to prove that reasonable cause to believe violation occurred did not exist, rather than seeking to psychoanalyze the regional director"). The courts that have passed on Section 10(j) and 10(l) petitions[3] have expressly declined to examine, and have refused to permit discovery of the processes by which the Board investigates and deliberates concerning the decision to institute preliminary injunction proceedings, because such matters are not relevant to the court's "just and proper" inquiry. See, e.g., *Madden v. International Hod Carriers*, 277 F.2d 688, 693 (7th Cir.), *cert. denied* 364 U.S. 863 (1960)(affirming refusal to require testimony of Board agent regarding the Board's preliminary investigation and the decisional process in 10(l) proceeding). Accord: *Building & Construction Trades Council v. Alpert*, 302 F.2d 594, 595-596 (1st Cir. 1962); *U.S. v. Electro-Voice, Inc.*, 879 F.Supp. 919, 923-924 (N.D. Ind. 1995); *D'Amico v. Cox Creek Refining Co.*, 126 F.R.D. 501, 505 (D. Md. 1989); *NLRB v. Trades Council*, 131 LRRM at 2023-24; *McLeod v. General Electric Co.*, 257 F. Supp. 690, 702 (S.D.N.Y. 1966), *rev'd on other grounds* 366 F.2d 847 (2d Cir. 1966), *stay granted* 87 S.Ct. 5 (1966) (J. Harlan), *vacated and remanded* 385 U.S. 533 (1967).

---

[3] Section 10(l) of the Act, 29 U.S.C. § 160(l), is a companion provision to Section 10(j) that obligates the Board to seek temporary injunctions in cases involving certain violations of the Act committed by unions, such as secondary boycotts.

In the instant case, whether injunctive relief is "just and proper" does not turn on what the Regional Director, or the Board's General Counsel may have thought or considered either in issuing the Board's administrative complaint or in deciding to seek interim injunctive relief under Section 10(j). Rather, it is the evidence adduced and the legal arguments advanced by the Board that are determinative. See *Madden v. International Hod Carriers*, 277 F.2d at 693 (the propriety of a 10(l) injunction is 'to be resolved by the evidence adduced by the Board in open court to sustain its petition;" the Board's internal investigation and determinations regarding the petition are 'judicially tested' only by the Board's subsequent ability to prove its case in court). This Court will test the propriety of injunctive relief herein by examining the evidence proffered by the Petitioner to prove the allegations of the Petition and the underlying unfair labor practice complaint and analyzing the Regional Director's legal theories as set forth in his pleadings and legal memoranda. It would be improper to transform this proceeding into an inquiry whether the Regional Director properly performed his official duties. See *McLeod v. General Electric Co.*, 257 F. Supp. at 702.

In sum, the material that Respondent seeks through the deposition of Director Barker is not relevant to any issue properly before the district court. On this basis, permitting the deposition to proceed would be improper.

WHEREFORE, consistent with Rule 26(C)(1) of the Federal Rules of Civil Procedure Petitioner respectfully moves the Court to quash the Notice of Deposition issued to Regional Director Barker in its entirety and issue a protective order preventing any compelled testimony of Director Barker in this case.

Dated at Chicago, Illinois this 16th day of May, 2008.

*/s/ Sylvia L. Taylor,, filed electronically*
Sylvia L. Taylor

7

*/s/ Jessica Willis Muth, filed electronically*
Jessica Willis Muth
Counsels for Petitioner
National Labor Relations Board, Region 13
209 S. LaSalle, Suite 900
Chicago, IL 60604
(312) 353-7617

## CERTIFICATE OF SERVICE

The undersigned hereby certify that true and correct copies of the foregoing Petitioner's Motion to Quash Respondent's Notice of Deposition, have, this 25th day of April, 2008, have been served in the manner indicated upon the following parties of record:

Certified Mail
Gem Healthcare
Attn: Michael Lerner
3553 W. Peterson Ave. #101
Chicago, IL 60659

Peter Andjelkovich & Associates
Attn: Peter Andjelkovich
39 S. LaSalle, Suite 200
Chicago, IL 60603

Asher, Gittler, Greenfield, Cohen & D'Alba Ltd.
Attn: Margaret Angelucci
200 W. Jackson Street, Suite 1900
Chicago, IL 60606


*/s/ Sylvia L. Taylor, filed electronically*
Sylvia L. Taylor


*/s/ Jessica Willis Muth, filed*
*electronically*
Jessica Willis Muth
Counsels for Petitioner
National Labor Relations Board, Region 13
209 South LaSalle Street, Suite 900
Chicago, Illinois 60604
(312) 353-7617

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH BARKER, Regional Director of Region 13 of the NATIONAL LABOR RELATIONS BOARD, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, | ) ) ) ) ) | |
| | ) | Case No.  08 CV 2229 |
| Petitioner, | ) ) | Judge Grady |
| vs. | ) ) | Magistrate Judge Cole |
| REGAL HEALTH AND REHAB CENTER | ) ) | |
| Respondent. | ) | |

**NOTICE OF DEPOSITION**

To:  Sylvia Taylor                    Margaret Angelucci
     National Labor Relations Board   Asher Gittler Greenfield & D'Alba, Ltd.
     209 South LaSalle Street, 9th Floor   200 West Jackson Blvd., Suite 1900
     Chicago, IL 60604                Chicago, IL 60606

**PLEASE TAKE NOTICE** that the deposition of the following individual will be taken

at 10:00 a.m. on Monday, May 19, 2008:

**Joseph Barker**
**Regional Director of Region 13**
**National Labor Relations Board**

The deposition will proceed before a notary public, or other officer authorized to administer

oaths at 39 South LaSalle Street, Suite 200, Chicago, Illinois  60603, in the above-entitled cause,

pursuant to applicable statutes and rules of court.  The above deposition will be taken for the

purpose of oral testimony.   At the time of deposition, Deponent is requested to produce all

documentation as listed on the attached Rider to Deposition.

Respectfully submitted,
REGAL HEALTH AND REHAB CENTER

By:_____
One of its attorneys

PETER ANDJELKOVICH & ASSOCIATES
Attorney for Respondent
39 South LaSalle Street, Suite 200
Chicago, Illinois  60603
(312) 782-8345
A:\Regal Health&Rehab\NoticeofDepositionBarker.wpd/ca59

## RIDER

RE:    Notice of Deposition:   Joseph Barker

1.      Documents to be produced at deposition:

      A.      Any and all documents, investigative reports or witness statements in support of Petitioner's Petition for Preliminary Injunction under Section 10J of the National Labor Relations Act.

      B.      Each and every document supporting your contention that the injunction sought in this matter is *"just and proper."*

## CERTIFICATE OF SERVICE

I, Carolyn Anderson, a non-attorney, hereby certify that the above and foregoing **Notice of Deposition** was served upon all counsel of record listed below by depositing a copy of same in the United States postal chute located at 39 South LaSalle Street, Chicago, Illinois, properly addressed, full postage prepaid, thereon this 7th day of **May, 2008**.


Sylvia Taylor
National Labor Relations Board
209 South LaSalle Street, 9th Floor
Chicago, IL 60604

Margaret Angelucci
Asher Gittler Greenfield & D'Alba, Ltd.
200 West Jackson Blvd., Suite 1900
Chicago, IL 60606


_Carolyn Anderson_
Carolyn Anderson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JOSEPH BARKER, Regional Director    )
of Region 13 of the NATIONAL LABOR    )
RELATIONS BOARD, for and on behalf    )
of the NATIONAL LABOR RELATIONS    )
BOARD,    )
    )   Case No.  08 CV 2229
    Petitioner,    )
    )   Judge Grady
vs.    )
    )   Magistrate Judge Cole
REGAL HEALTH AND REHAB CENTER    )
    )
    Respondent.    )

### RESPONDENT'S NOTICE TO PRODUCE DIRECTED TO
### TO PETITIONER

**NOW COMES** Respondent, REGAL HEALTH AND REHAB CENTER ("Regal"), by

its attorneys, Peter Andjelkovich & Associates, pursuant to Fed.R.Civ. P.34, and hereby requests

Petitioner, Joseph Barker ("Barker"), Regional Director of Region 13 of the National Labor

Relations Board, for and on behalf of the National Labor Relations Board, within thirty (30) days

of receipt hereof, produce for inspection and copying at a place mutually convenient to counsel

for Respondent and counsel for Petitioner, each document relating directly or indirectly to the

subject matter of this action, including, but not limited to, the requests following:

### DOCUMENTS TO BE PRODUCED

1.    Any and all documents, investigative reports or witness statements in support of
Petitioner's Petition for Preliminary Injunction under Section 10J of the National Labor
Relations Act.

2.    Each and every document supporting your contention that the injunction sought in this
matter is *"just and proper."*

3.     Names and addresses of any and all witnesses you intend to call to testify in this matter.

Respectfully submitted,
REGAL HEALTH AND REHAB CENTER

By:_____
One of its attorneys

Peter Andjelkovich, Esq.
Peter Andjelkovich & Associates
39 South LaSalle Street, Suite 200
Chicago, IL 60603
312/782-8345

## CERTIFICATE OF SERVICE

I, Carolyn Anderson, a non-attorney, hereby certify that the above and foregoing

**RESPONDENT'S NOTICE TO PRODUCE DIRECTED TO PETITIONER** was served

upon all counsel of record listed below by depositing a copy of same in the United States postal

chute located at 39 South LaSalle Street, Chicago, Illinois, properly addressed, full postage

prepaid, thereon this **7**[th] day of **May, 2008**.

Sylvia Taylor
National Labor Relations Board
209 South LaSalle Street, 9th Floor
Chicago, IL 60604

Margaret Angelucci
Asher Gittler Greenfield & D'Alba, Ltd.
200 West Jackson Blvd., Suite 1900
Chicago, IL 60606

_Carolyn Anderson_
Carolyn Anderson

Not Reported in F.2d, 1989 WL 98643 (3rd Cir.), 57 USLW 2627, 131 L.R.R.M. (BNA) 2022
**(Publication page references are not available for this document.)**

N.L.R.B. v. Building and Const. Trades Council of Philadelphia and Vicinity, AFL-CIO

BNA Labor Relations Reporter Headnote - LRRM Cases

LABOR MANAGEMENT RELATIONS ACT

3. Disclosure of documents -- Work product
C36.629 C36.64
C.A.3,1989.

  NLRB is not required to provide union that is charged with unfair labor prac-
tices with witness statements and notes taken by board investigators while inter-
viewing witnesses, including union's agents and representatives, since documents
sought fall within work product privilege. Union's claims that it needs notes to
refresh its recollections and that notes may lead to discoverable matter that will
substantially reduce amount of discovery do not qualify as exceptions to ordinary
protection afforded work product.

N.L.R.B. v. Building and Const. Trades Council of Philadelphia and Vicinity, AFL-CIO

MEMORANDUM ORDER

P. DOUGLAS SISK, Special Master

Presented for consideration is the motion of Petitioner, National Labor Relations
Board (N.L.R.B. or Board), for the issuance of a protective order pursuant to Rule
26(c)(1), Federal Rules of Civil Procedure, directing that the deposition of Re-
gional Director Peter Hirsch not be taken and that certain documents sought in Re-
spondent's second request for production of documents not be divulged.   Respond-
ents, Building and Construction Trades Council (B.C.T.C.) and Patrick Gillespie,
have filed an answer in opposition.   Additional argument was offered by the
parties during a discovery hearing on March 31, 1989.

Deposition of Peter Hirsch

On or about February 15, 1989, counsel for Respondent served a notice to take the
deposition of Regional Director Peter Hirsch.   The Board seeks a protective order
asserting, pertinently, that there is no legitimate reason to depose Mr. Hirsch,
that the knowledge which the Director has is the result solely of his official ca-
pacity in the Board, that examination of his thought processes is improper, and
that the deliberative processes of government agencies are privileged.   Further,
the Board asserts that to the extent that Respondents may wish to probe the sub-
stance of any interviews the Regional Director may have had with potential wit-
nesses or investigators, that such communications are privileged absent a showing
of substantial need, and that none has been shown here.   At the discovery hearing

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.2d, 1989 WL 98643 (3rd Cir.), 57 USLW 2627, 131 L.R.R.M. (BNA) 2022
**(Publication page references are not available for this document.)**

the Board further stated that whatever information which Mr. Hirsch possesses has
come to him by virtue of his official capacity.   Counsel for the Board maintained
that any and all information available to Mr. Hirsch has been given in discovery
to the extent it is properly discoverable.

Through its answer and argument offered by counsel at the discovery hearing,
B.C.T.C. argues that the protection motion is premature in that Mr. Hirsch should
be deposed and any objections to specific questions should be interposed at that
time.   Respondent contends that the deposition of Mr. Hirsch is necessary to es-
tablish facts and circumstances critical to Respondent's defense.   Respondent ar-
gues that the questioning would go not to the state of mind or legal conclusions
of the Director, but rather his knowledge of certain facts.   Respondents' posi-
tion, as set forth at the discovery hearing, is that Mr. Hirsch is needed 1) to
authenticate documents [FN1], 2) to state facts relating to Mr. Hirsch's initial
decision to discharge a claim relating to the Ponderosa work site, a claim which
the Board has pursued in these proceedings despite the Regional Director's initial
determination, and 3) to recite names of witnesses relevant to the Marriott work
site. [FN2]  Respondents assert, in general, that the broad latitude normally ac-
corded in discovery should obtain here and that Respondent is not seeking discov-
ery of thought processes, but rather facts within the knowledge and control of the
Regional Director.

I will grant the Board's motion for a protective order with regard to Mr.
Hirsch.   In view of the Board's stipulation of authenticity of any Board docu-
ments and its provision of the list of witnesses for the Marriott work site, foot-
notes 1 & 2, supra, the only question is the propriety of deposing Mr. Hirsch on
factual information in his knowledge, and specifically, the facts he used in de-
termining to dismiss charges on the Ponderosa work site.   It is highly improbable
that the proposed inquiry could be limited to only fact and exclude work product
or deliberative processes.   The information within the knowledge and control of
Mr. Hirsch is so intertwined with the litigation processes of the Board as to be
privileged absent a showing of substantial need and inability to obtain the in-
formation by other means.   Hickman v. Taylor, 329 U.S. 495, 512-513 (1946);  Bogo-
sian v. Gulf Oil Corp., 738 F.2d 587, 592-593 (3d Cir.1984.)   It is clear that in
his official capacity as Regional Director, Mr. Hirsch is the recipient of inform-
ation distilled from the investigations of his agents and of analysis which is
clearly the work product of his attorneys and investigators.   (See discussion of
production of documents, infra.)   To the extent that the Regional Director has
factual information (barring his actual presence at the job sites, and there is no
such assertion here) relevant to the inquiries, it is the distillation of the re-
ports and thought processes of the Board's attorneys' and investigators, and
therefore, privileged.  Hickman, supra at 511;  Bogosian, supra at 592;  Upjohn v.
United States, 449 U.S. 383, 400 (1981)  To the extent that the Regional Director
could offer his opinions with respect to his dismissal of the Ponderosa claim,
though certainly highly useful for Respondents, they would be irrelevant and imma-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.2d, 1989 WL 98643 (3rd Cir.), 57 USLW 2627, 131 L.R.R.M. (BNA) 2022
**(Publication page references are not available for this document.)**

terial to these proceedings, which will turn on questions of fact, such as whether specific gates were tainted. N.L.R.B. v. Whittier Mills Co., 123 F.2d 725, 728 (5th Cir.1941)

Finally, B.C.T.C. has made no serious showing of substantial need or inability to obtain the information it seeks through any other means than deposing the Regional Director. The facts surrounding the Ponderosa incident, and all other incidents, can be developed through other depositions, and the relevance and materiality of those facts will abide the eventual hearing.

Production of Documents

Petitioner also requests a protective order with respect to specific documentation sought in Respondents' second request for production of documents. Respondents seek, inter alia, production of 1) inter-agency memoranda and notes relating to the investigation and evaluation of the merits of the incidents, and 2) production of witness statements, signed or unsigned, and (3) notes taken by Board investigators while interviewing witnesses, including B.C.T.C.'s agents and representatives.

The request for inter-agency memoranda and notes, which are clearly privileged, will be denied and the protective order granted. The documents sought relate to the investigation and the evaluation of the merits of the cases, and they are protected from disclosure by the well established privilege accorded to such memoranda. N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150-154 (1975); N.L.R.B. v. Sun Drug Co., 359 F.2d 408, 413 (3d Cir.1966). [FN3]

With respect to the balance of the documents, Petitioner and Respondents properly assert that their production is governed by the doctrine of Hickman v. Taylor, 329 U.S. 495 (1946); Rule 26(b)(3), Federal Rules of Civil Procedure. Briefly, work product, trial preparation material, etc., is ordinarily privileged matter, except "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Rule 26(b)(3). The Court of Appeals for the Third Circuit reviewed the Hickman doctrine in Bogosian v. Gulf Oil Corp., 738 F.2d 587, 592-593 (1984). Bogosian renders it clear that the documents sought by Respondents fall squarely within the privilege explained by the Hickman Court. Unless Respondents can proffer a very strong showing of substantial need for the documents, which they can not otherwise obtain without undue hardship, their request for documentation must be denied. Bogosian, 738 F.2d at 593. Moreover, the court of appeals' analysis of Upjohn v. United States, 449 U.S. 383, 400 (1981), underscores the very strong requirement of showing necessity and unavailability to overcome the protection. Id.

Specifically, Respondents seek 1) witness statements, signed and unsigned, of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.2d, 1989 WL 98643 (3rd Cir.), 57 USLW 2627, 131 L.R.R.M. (BNA) 2022
**(Publication page references are not available for this document.)**

B.C.T.C.'s "own" witnesses/agents and those of third parties interviewed by the Board during initial investigations, and 2) the notes and impressions of agents who interviewed the witnesses.  Respondents candidly admit that they need the notes of their own agents' statements to refresh their recollections, in view of failing memories and the absence of their own notes.  Further, that notes may lead to discoverable matter which will substantially reduce the amount of discovery and obviate the need for certain depositions.  The Board counters, in its moving papers and during the hearing, that no affidavits exist and that all notes taken by the Board's investigators and attorneys are privileged. [FN4]

Respondents reasons do not qualify as an exception to the ordinary protection afforded work product.  The identity of the witnesses is known, and therefore, the information sought can be developed through the normal, though time-consuming, processes of deposition.  8 Wright & Miller 215, commenting on Rule 26(b)(3); see, Hickman, 329 U.S. at 508-9.  While the goal of controlling unnecessary discovery is laudable, the salutary purpose of depositions is to discover relevant information.  The mere unavailability of one's own investigative notes does not warrant disclosure of one's opponents' investigative process.  Finally, the possibility of discovering information which may be useful in impeaching witnesses is not a sufficient reason to permit discovery.  In Re Grand Jury Investigation, 599 F.2d 1224, 1232-33 (3d Cir.1979).

To the extent Respondents seek third party witness statements on the theory that they were not taken in anticipation of litigation and are, therefore, not privileged, the Board's motion for a protective order will be granted.  It is clear that statements taken in anticipation of a contempt proceeding are in anticipation of litigation and are privileged.  Kent Corp. v. N.L.R.B., 530 F.2d 612, 623 (5th Cir.1976.)

Summary:

In light of the above, I will grant the Board's motion to preclude the deposition of Regional Director Peter W. Hirsch and the motion to preclude production of the documents set forth in the Board's motion. [FN5]

### REPORT AND RECOMMENDATION

By order entered October 4, 1988, the United States Court of Appeals for the Third Circuit referred to me for appropriate proceedings the within petition for an adjudication of civil contempt.  Pursuant to the settlement conference of June 28, 1989, I received, on July 14, 1989, a fully executed copy of the proposed settlement agreement, together with a motion for the approval of the Special Master and referral of the agreement to the Court.  Upon review, I approve the proposed stipulation.  It is consonant with the discussions of the parties at the June 28 conference.  Further, it is consonant with the interests of the National Labor Relations Board in vindicating national labor policy and with those of the Build-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.2d, 1989 WL 98643 (3rd Cir.), 57 USLW 2627, 131 L.R.R.M. (BNA) 2022
**(Publication page references are not available for this document.)**

ing and Construction Trades Council (BCTC) in preserving a strong association of trade unions in the Philadelphia area.  For reasons which follow, I respectfully recommend that the Court approve the joint stipulation for entry of contempt adjudication.

These contempt proceedings against the BCTC and Patrick Gillespie were instituted because of alleged violations of this Court's judgments entered March 4, 1974 (No. 74-1143) and November 28, 1980 (No. 80-2506) and contempt adjudications entered May 24, 1982 (No. 82-2485), January 31, 1984 (No. 83- 3456) and August 4, 1986 (No. 85-3418).  The Board filed its petition for adjudication of civil contempt on August 3, 1988.  The Court received an answer, and subsequently appointed a Special Master to conduct appropriate proceedings and to prepare a report and recommendation.

In light of the proposed stipulation, it is unnecessary to fully recite the facts.  The alleged violations of this Court's orders occurred at six separate job sites [FN1].  The alleged violations occurred during a several month period from September 1987 through March 1988.  The contumacious behavior alleged by the Board included violation of the "reserve" or "dual gate" system, intentional enmeshment of neutral employees in a labor dispute, disruption of businesses, and threats against neutral third parties.

From the point of referral, the parties engaged in substantial discovery and active preparation for a hearing.  It was anticipated by the parties that the hearing would have taken ten days and would have involved in excess of thirty witnesses.  On June 28, 1989, a settlement conference occurred among the attorneys for the Board, counsel for the BCTC, and the Special Master.  A draft settlement document was discussed and modified during the four-and-one-half hour conference.  Substantial agreement on all points, except the schedule of payment for the fine, was achieved during the conference.  The balance of the agreement was negotiated among the parties thereafter.

Specific terms of the final proposed stipulation merit comment.  The amount of the proposed non-compliance fine is $250,000, of which $100,000 is suspended on condition of future compliance with the judgments and orders of this Court. The non-suspended amount of the fine is three hundred percent higher than the amount last imposed in No. 85-3418 (Order entered August 4, 1986), and it will be payable over 48 months to accommodate the needs of the Council.  Prospective fines for the BCTC have been doubled for each violation, from $50,000 to $100,000.  Subsequent days in violation will result in greatly increased fines, from $2,000 to $10,000 each day.  The amounts of these fines, for non-compliance with extant orders and for prospective violations, are sufficient to vindicate this Court's interest in enforcing its Orders and the Board's interest in enforcing national labor policy and in deterring any future contumacious conduct.

With regard to terms of the proposed stipulation, the Court should note provi-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.2d, 1989 WL 98643 (3rd Cir.), 57 USLW 2627, 131 L.R.R.M. (BNA) 2022
**(Publication page references are not available for this document.)**

sions 8-11, in which BCTC will establish a self-monitoring system designed to pre-
vent unlawful, unauthorized picketing.   The system enables BCTC to ensure that
its constituent trade unions have been notified and instructed where any picketing
activity could violate the National Labor Relations Acts and the terms of this
Court's orders.   These provisions detail procedures to be taken in the event of
apparent "gate contamination" and illegal picketing. The provisions set forth the
duties of the BCTC Business Manager, while creating a set of procedures designed
to put constituent unions and their members on notice of the limitations of lawful
picketing.   If properly executed, the procedures will automatically create busi-
ness records useful in determining any future violations.   These provisions, ini-
tially drafted by counsel for the BCTC, circumscribe BCTC activities, while
providing useful tools to govern member conduct and to prove its compliance with
this Court's orders.   I recommend approval of these creative provisions because
they establish a blueprint for compliance which may finally end this series of
contempt adjudication proceedings and the imposition of fines which have wasted
BCTC resources.

Accordingly, I respectfully recommend that the Court approve in toto the proposed
stipulation for entry of consent contempt adjudication submitted by the parties.
I will transmit the entire record of the proceedings to the Clerk and request that
she refer the matter to the Court for review.   In light of the joint stipulation
and my approval thereof and in the interest of preventing unnecessary delay in ap-
proving the stipulation, I will suspend the period in which to file objections to
the Report and Recommendation.   Should any objection be necessary, the parties
are directed to advise the Clerk forthwith.

    FN1. At the discovery hearing counsel for the Board agreed to stipulate to
    the authenticity of any discoverable Board documents.

    FN2. In the course of the hearing, Respondents were supplied with the names
    of those witnesses relevant to the Marriott work site, thereby obviating Mr.
    Hirsch's participation on this point.

    FN3. This privilege extends to an attorney acting as an investigator, i.e.,
    where he personally prepares a memorandum of an interview of a witness with
    an eye toward litigation.   Harper & Row Publishers, Inc. v. Decker, 423
    F.2d 487, 492 (7th Cir.1970).

    FN4. The usual redactive process, in which the affiant gives a statement,
    reviews, revises, and ultimately swears to, did not occur here.   Instead,
    the Board has in its possession only the notes and impressions of its agents
    and attorneys.

    FN5. This order is without prejudice to the recognized practice of producing
    "Jencks Act" witnesses' prior statements just prior to the ultimate hearing.

    FN1. Delran Builders Co. job sites:  Gimsan Plaza;  Fairview Nursing

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.2d, 1989 WL 98643 (3rd Cir.), 57 USLW 2627, 131 L.R.R.M. (BNA) 2022
**(Publication page references are not available for this document.)**

> Home;  and, Quality Control Lab (unlawful picketing).   Wohlsen Construction
> Co. job sites:  Center Pointe Plaza;  and, Marriott Hotel (unlawful picket-
> ing).   Midlantic/Ponderosa Restaurant (unlawful picketing and other activ-
> ity).

Not Reported in F.2d, 1989 WL 98643 (3rd Cir.), 57 USLW 2627, 131 L.R.R.M. (BNA)
2022

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

208 F.R.D. 565, 171 L.R.R.M. (BNA) 3247

Motions, Pleadings and Filings

United States District Court, S.D. West Virginia.
Richard L. AHEARN, Regional Director of the Ninth Region of the National Labor Relations Board, et al., Petitioners,
v.
RESCARE WEST VIRGINIA, Respondent.
No. CIV.A. 2:02-0368.
July 8, 2002.

National Labor Relations Board (NLRB) petitioned for injunction against employer, enjoining alleged unfair labor practices. NLRB moved to quash employer's notice of deposition, and nonparty union moved to quash subpoena duces tecum and deposition of union representative. The District Court, Stanley, United States Magistrate Judge, held that: (1) employer was not entitled to depose regional director of NLRB who was not witness to underlying events; (2) memorandum including signatures of employees who no longer wanted union representation was relevant; (3) subpoena of unrelated or irrelevant documents could be quashed; (4) documents about past grievances were related to reasonable cause; and (5) deposition of nonparty union organizer was required to be limited to questions relating to unfair labor practices alleged in petition.

Motions granted in part and denied in part.

West Headnotes

[1] KeyCite Notes 

☞ **170A** Federal Civil Procedure
   ☞ **170AX** Depositions and Discovery
      ☞ **170AX(C)** Depositions of Parties and Others Pending Action
         ☞ **170AX(C)1** In General
            ☞ **170Ak1323** Persons Whose Depositions May Be Taken
               ☞ **170Ak1323.1** k. In General. Most Cited Cases

☞ **170A** Federal Civil Procedure KeyCite Notes 
   ☞ **170AX** Depositions and Discovery
      ☞ **170AX(C)** Depositions of Parties and Others Pending Action
         ☞ **170AX(C)4** Scope of Examination
            ☞ **170Ak1414** Privileged Matters
               ☞ **170Ak1415** k. Results of Investigation or of Preparation for Litigation or Trial. Most Cited Cases

Employer was not entitled to depose regional director of National Labor Relations Board (NLRB) who was not witness to events underlying NLRB's action to enjoin employer from future unfair labor practices; any information within director's knowledge and control would have been privileged work product of his attorneys and investigators, and employer failed to show substantial need or inability to obtain information by other means. National Labor Relations Act, § 10(j), as amended, 29 U.S.C.A. § 160(j); Fed.Rules Civ.Proc.Rule 26(c)(1), 28 U.S.C.A.

[2] KeyCite Notes 

↪410 Witnesses
    ⇐410I In General
        ⇐410k16 k. Subpoena Duces Tecum. Most Cited Cases

    Memorandum which included signatures of employees who no longer wished to be represented by union was relevant to action by National Labor Relations Board (NLRB) seeking to enjoin employer from unfair labor practices, and thus subpoena duces tecum requesting production of the document could not be quashed. National Labor Relations Act, § 10(j), as amended, 29 U.S.C.A. § 160(j); Fed.Rules Civ.Proc.Rule 26(c)(1), 28 U.S.C.A.

[3] KeyCite Notes 

↪410 Witnesses
    ⇐410I In General
        ⇐410k16 k. Subpoena Duces Tecum. Most Cited Cases

    Employer's subpoena duces tecum, to discover written statements by nonparty union representative to National Labor Relations Board (NLRB), could be quashed; statements did not relate to NLRB's action to enjoin employer from unfair labor practices in violation of the NLRA. National Labor Relations Act, § 10(j), as amended, 29 U.S.C.A. § 160(j); Fed.Rules Civ.Proc.Rule 26(c)(1), 28 U.S.C.A.

[4] KeyCite Notes 

↪410 Witnesses
    ⇐410I In General
        ⇐410k16 k. Subpoena Duces Tecum. Most Cited Cases

    Documents requested by employer, in subpoena duces tecum issued to nonparty union, related to bargaining conduct, rather than issue of whether employer unlawfully withdrew recognition of union based on majority of employees declining union representation, and thus subpoena could be quashed as not relevant to issues before court, in National Labor Relations Board's (NLRB) action to enjoin employer from unfair labor practices in violation of NLRA. National Labor Relations Act, § 10(j), as amended, 29 U.S.C.A. § 160(j); Fed.Rules Civ.Proc.Rule 26(c)(1), 28 U.S.C.A.

[5] KeyCite Notes 

↪410 Witnesses
    ⇐410I In General
        ⇐410k16 k. Subpoena Duces Tecum. Most Cited Cases

    Documents about past grievances related to reasonable cause issue in action by National Labor Relations Board (NLRB) seeking to enjoin employer from unfair labor practices, and thus subpoena duces tecum requesting documents relating to grievances were discoverable from nonparty union; underlying charge alleged unlawful refusal to take two employees' grievances to arbitration, and grievances of other employees were related. National Labor Relations Act, § 10(j), as amended, 29 U.S.C.A. § 160(j); Fed.Rules Civ.Proc.Rule 26(c)(1), 28 U.S.C.A.



[6] KeyCite Notes

  170A Federal Civil Procedure
    170AX Depositions and Discovery
      170AX(C) Depositions of Parties and Others Pending Action
        170AX(C)2 Proceedings
          170Ak1355 Orders for Protection of Parties and Deponents Before Oral Examination
            170Ak1361 k. Limiting Scope of Examination in General. Most Cited Cases

    Deposition of nonparty union organizer by employer, in action by National Labor Relations Board (NLRB) to enjoin employer from engaging in unfair labor practices, was required to be limited to questions relating to unfair labor practices alleged in petition. National Labor Relations Act, § 10(j), as amended, 29 U.S.C.A. § 160(j); Fed.Rules Civ.Proc.Rule 26(c)(1), 28 U.S.C.A.

**\*566** David L. Ness, Region 9, National Labor Relations Board, Cincinnati, OH, for Petitioners.

Larry A. Winter, Winter Johnson & Hill, Charleston, WV, for Respondent.

James M. Haviland, Crandall Pyles Haviland Turner & Twyman, Charleston, WV, for Frank Hornick and District 1199.

## *567 MEMORANDUM OPINION AND ORDER

STANLEY, United States Magistrate Judge.
    Pending before the court are (1) Petitioner's Motion to Quash Respondent's Notice of Deposition Pending Decision Pursuant to Fed.R.Civ.P. 26(C)(1), filed May 17, 2002 (Document # 14); and (2) Motion to Quash or for Protective Order, filed May 28, 2002, by nonparties, Frank Hornick and his employer, District 1199, the Service Employees International Union (Document # 20). The parties and nonparties have responded and replied, the court heard oral argument on July 2, 2002, and the motions are ripe for decision.

*Procedural History and Factual Background*
    On April 23, 2002, Petitioner filed a Petition for Injunction under Section 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(j) (the "Act"). (Document # 1.) After a charge and amended charge were filed with Petitioner, Petitioner issued a complaint, which was heard by an Administrative Law Judge ("ALJ") of the National Labor Relations Board (the "Board" or "NLRB") beginning on April 24, 2002. The complaint generally alleges that Respondent has been engaging in unfair labor practices within the meaning of Section 8(a)(1) and (5) of the Act. (Document # 1, ¶¶ 3, 4.) The matter currently is pending before the ALJ.

    More specifically, Petitioner alleges that Respondent, a corporation engaged in the operation of group homes for the mentally disabled at various facilities in West Virginia, in some cases through its employees, solicited employees at its Amherstdale, Man and Accoville locations and at other locations to sign a petition to decertify the union as their collective bargaining representative, promised employees that its Logan Group Homes employees would receive increased wages or benefits if they voted to decertify the union and informed employees that its Logan Group Homes employees had received improved wages and benefits because they voted to decertify the union. In addition, Petitioner alleges that Respondent withdrew recognition of the union as its exclusive collective bargaining representative, refused to arbitrate grievances that the union filed under the terms of the prior collective-bargaining agreement and implemented various wage and benefit changes without prior notice to the union and without affording the union an opportunity to bargain. (Document # 1, ¶ 6(a)-(n), prayer for relief ¶ 1(a)-(b).)

In the Petition before the District Court, Petitioner asserts that unless enjoined, Respondent will continue to violate the Act. (Document # 1, ¶ 8.) On April 23, 2002, Petitioner also filed a Motion to Hear 10(J) Petition on the Administrative Law Judge's Hearing Transcript and Exhibits Supplemented, if Necessary, by Affidavit Evidence. (Document # 2.) By Order and Notice entered June 3, 2002, the District Court denied the pending motions without prejudice. With respect to the issue of whether there is reasonable cause to believe the Act has been violated, the District Court set a briefing schedule and indicated that if it determined reasonable cause had been shown, that it would schedule an early evidentiary hearing on the issue of whether interim injunctive relief is just and proper. (Document # 24.)

*Petitioner's Motion to Quash*

[1] Respondent noticed the deposition of Petitioner Richard L. Ahearn, Regional Director of the Ninth Region of the NLRB, but did not identify the testimony sought from Mr. Ahearn in the notice of deposition. Petitioner argues that the deposition notice should be quashed because Respondent seeks disclosure of information that is not relevant to the issues before the District Court related to whether an injunction should issue. In addition, Petitioner argues that he possesses no discoverable information. According to Petitioner, the only inquiries that could be made of him concern the factual basis and underlying reason for the decision to seek injunctive relief and what significance Mr. Ahearn attached to various facts, thereby clearly implicating the deliberative process privilege and the attorney work product doctrine. Petitioner further argues that Respondent has made no showing of substantial need.

**\*568** In response, Respondent states that it does not seek information protected by the deliberative process privilege or work product doctrine and that it only seeks facts Mr. Ahearn possesses relevant to the Petition pending before the court. Respondent points out that Mr. Ahearn verified his knowledge of the facts giving rise to the Petition. In addition, at the hearing on these motions, Respondent argued that Mr. Ahearn may know facts underlying the allegations of the Petition.

The court finds that Petitioner's Motion should be granted. Mr. Ahearn was not a witness to the events at issue in this case and has no first hand knowledge of relevant evidence in the case. Furthermore, any and all evidence relied upon by Mr. Ahearn in bringing the Petitioner was presented at the administrative hearing. The evidence to be considered by the ALJ in determining the merits of the alleged unfair labor practices and which form the basis for determining reasonable cause in the injunctive proceeding before the District Court, is contained solely in the record before the ALJ. Thus, the only reasonable area of inquiry would involve Mr. Ahearn's mental impressions and opinions in weighing the evidence generated from the Board's investigation. Mr. Ahearn was the "recipient of information distilled from the investigations of his agents and of analysis which is clearly the work product of his attorneys and investigators." *NLRB v. Trades Council,* 131 LRRM 2022, 2024, 1989 WL 98643 (3d Cir.1989) (attached to Petitioner's Memorandum in Support of Motion to Quash). As such, any information within Mr. Ahearn's knowledge and control "is so intertwined with the litigation process of the Board as to be privileged absent a showing of substantial need and inability to obtain the information by other means." *Id.* (citing *Hickman v. Taylor,* 329 U.S. 495, 512-513, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 592-93 (3d Cir.1984)). Respondent has not made the requisite showing of substantial need or an inability to obtain the information by other means. Therefore, it is hereby **ORDERED** that Petitioner's Motion to Quash is **GRANTED**.

*Motion to Quash or for Protective Order-Frank Hornick/the Union*
Respondents served two subpoenas, one seeking production of documents from Service Employees International Union, District 1119 (the "Union") and the other seeking to depose Frank Hornick, the Union representative who services the West Virginia unionized operations of Respondent and the Union's records custodian. Mr. Hornick and the Union (collectively referred to as the "Union") argue that the information and documents sought are irrelevant and confidential.

[2]    Respondent's subpoena *duces tecum* served on the Union identified twelve (12) document requests. The Union agreed to produce documents responsive to Request Numbers 4 through 10, with agreement from Respondent that by turning over such documents, the Union did not waive any rights to object in other proceedings. The remaining document requests are set forth verbatim below, followed by the court's ruling as to each document request.

1. Any and all documents relating to any petitions signed by or circulated among Respondent's Logan County, West Virginia employees, indicating either support or lack of support for District 1199, the Health Care and Social Service Employees Union, AFL-CIO ("SEIU").

At the hearing, counsel for the Union provided the one document responsive to this request to the court *in camera.* It consists of a memorandum dated March 3, 2002. After the hearing, Respondent provided a copy of a memorandum dated September 1, 2001, that included signatures of employees who no longer wished to be represented by the Union. It is hereby **ORDERED** that the two memoranda, marked for identification as Court Exhibits One and Two, respectively, are filed **under seal**.

The Union argues that the document responsive to this request is confidential because it was prepared by Mr. Hornick to assess Union strength at a particular time and assurances were given to the persons identified therein that their identity would not be revealed unless absolutely necessary. *569 Respondent argues that the issue of Union support among its employees, or the lack thereof, is relevant to the instant case, and the case law relied upon by the Union is inapposite.

The court finds that the document responsive to Request Number 1 goes to the issue of whether Respondent lawfully withdrew recognition of the Union based on a majority of employees declining Union representation and, as a result, may have some bearing on the issues to be decided by the District Court related to reasonable cause. The court finds the Union's reliance on *International Union v. Garner,* 102 F.R.D. 108, 115 (M.D.Tenn.1984), misplaced, as that case involved union authorization cards, and the employer in that case had previously engaged in unlawful surveillance of known union members, which conduct allegedly would continue if the employer were provided a list of additional union supporters. Such allegations are not present in the instant case.

The court is sensitive to the concerns of the Union related to confidentiality and directed the parties to submit an agreed protective order using *D'Amico v. Cox Creek Refining Co.,* 126 F.R.D. 501, 506-07 (D.Md.1989), as a model. The court is in receipt of the parties' proposed (1) Protective Language Proposed by SEIU, Hornick and Voca and (2) Order Pursuant to FRCP 26(c), finds both documents acceptable and will enter the Order. Accordingly, it is hereby **ORDERED** that the Union's Motion is **DENIED** as to Document Request Number 1 and that if no objections to this court's order are filed pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, on or before July 25, 2002, counsel for Respondent may submit a letter to the court (copy to counsel for Petitioner and the Union), requesting a copy of the document.

2. Any and all documents, including any position statements or correspondence, prepared by or on behalf of SEIU and relating to National Labor Relations Board ("NLRB") charge and case number 9-CA-38751.

[3]    The Union represented that only one of three statements given by Mr. Hornick to the NLRB mentions any specifics pertaining to the allegations at issue in the Petition. Mr. Hornick represented at the hearing that Petitioner produced this statement dated October 16, 2001, to Respondent. The Union submitted to the court *in camera,* the two remaining statements by Mr. Hornick dated February 7, 2002, and March 8, 2002. It is hereby **ORDERED** that the two statements, marked for identification as Court Exhibits Three and Four, respectively are filed **under seal**.

The court has reviewed the two statements and finds that they pertain to other cases and do not relate to the matters at issue before the District Court. *Madden v. Milk Wagon Drivers Union Local*

*753,* 229 F.Supp. 490, 492 (N.D.Ill.1964) (respondent in a 10(j) proceeding is limited to the issues raised by the petition for an injunction). Accordingly, it is hereby **ORDERED** that the Union's Motion is **GRANTED** as to Document Request Number 2.

3. Any and all documents, including any affidavits, questionnaires, requests for information, responses to requests for information, or statements, sent by SEIU to, or obtained from, any of Respondent's current or former Logan County, West Virginia employees, from January, 2001 to the present.

The Union represents that there are no documents responsive to this request and, as a result, it is hereby **ORDERED** that the Union's Motion as to Document Request Number 3 is **GRANTED**.

11. Any and all documents relating to negotiations held between SEIU and Rescare West Virginia, d/b/a/ Voca Corporation of West Virginia, Inc., from January 2000 to the present, including, but not limited to, documents relating to wages, health insurance benefits, and any and all other employment benefits. This request includes, but is not limited to, all notes, bargaining proposals, offer rejections, and summaries of negotiations.

[4]    The Union argues that the documents requested in Document Request Number 11 do not relate to the alleged conduct of Respondent in unlawfully obtaining employee support for a decertification petition. Respondent***570** argues that the documents are relevant to the September 2001, alleged unlawful wage increase at issue, which the injunctive relief, if granted, would reverse.

The court finds that the documents sought in Request Number 11 relate to bargaining conduct, not to the issue of whether Respondent unlawfully withdrew recognition of the Union based on a majority of employees declining Union representation. Because documents responsive to this request are not relevant to the issues before the District Court related to reasonable cause, it is hereby **ORDERED** that the Union's Motion is **GRANTED** with respect to Document Request Number 11.

12. Any and all documents relating to grievances filed by SEIU, including answers to all grievances, from January 2001 to the present.

[5]    As Respondent points out in its response, the underlying charge alleges unlawful refusal to take two employees' grievances to arbitration. (Document # 1, ¶ 6(k).) However, the Union argues that documents relating to other grievances are not discoverable.

The court finds that documents about past grievances shed light on the allegations contained in the Petition and issues before the District Court related to reasonable cause. Accordingly, it is hereby **ORDERED** that the Union's Motion is **DENIED** as to Document Request Number 12.

[6]    Finally, as to Mr. Hornick's deposition, counsel for the Union explained at the hearing that despite the fact his client was not a witness at the administrative proceedings, he does not oppose the taking of Mr. Hornick's deposition altogether. Instead, he requests that the court limit the topics of the deposition to the narrow charge and circumstances for which injunctive relief is sought. In particular, Mr. Hornick seeks a protective order preventing questioning as to collective bargaining negotiations for the entire West Virginia unit, grievance handling at the Man facilities, unfair labor practices at other West Virginia and some Ohio facilities and union support of the Man locations. Finally, Mr. Hornick argues that pursuant to *International Union v. Garner,* 102 F.R.D. 108 (M.D.Tenn.1984), to the extent he learned information through Union members, such information is privileged and cannot be disclosed.

Respondent argues that Mr. Hornick is the union organizer for the West Virginia units, he worked with the Logan employees, attended the Board hearing and initiated the entire matter by filing an

unfair labor practice charge with the Board. As such, Mr. Hornick waived any applicable privilege, and his deposition is entirely appropriate.

The court has reviewed *Garner* and, as discussed above, finds it is distinguishable from the instant case. The court further finds the case of *Kobell v. Reid Plastics, Inc., 136 F.R.D. 575, 580 (W.D.Pa.1991)*, convincing, wherein the court allowed the deposition of the union's field organizer because the union was the charging party which presumably assisted the Board's investigation and provided the Board with evidence and witnesses relied on by the Board to establish its case. However, the court finds that Mr. Hornick's deposition must be limited to questions relating to the unfair labor practices alleged in the Petition. It is hereby **ORDERED** that the Union's Motion is **DENIED** with respect to the taking of Mr. Hornick's deposition. Mr. Hornick's deposition may proceed within the parameters of the court's order outlined above.

Accordingly, it is hereby **ORDERED** that Petitioner's Motion to Quash Respondent's Notice of Deposition Pending Decision Pursuant to *Fed.R.Civ.P. 26(C)(1)* is **GRANTED**. It is further hereby **ORDERED** that the Motion to Quash or for Protective Order filed by nonparties, Frank Hornick and his employer, District 1199, the Service Employees International Union is **GRANTED in part and DENIED in part** as set forth more fully above.

The Clerk is requested to fax and mail a copy of this Memorandum Opinion and Order to all counsel of record and James M. Haviland, Crandall Pyles Haviland Turner & Twyman, LLP, P.O. Box 3465, Charleston, ***571** WV 25334 and post this published opinion at *http://www.wvsd.uscourts.gov.*

S.D.W.Va.,2002.
Ahearn v. Rescare West Virginia
208 F.R.D. 565, 171 L.R.R.M. (BNA) 3247

Motions, Pleadings and Filings (Back to top)

• 2:02CV00368 (Docket) (Apr. 23, 2002)
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTREICT OF ILLINOIS
EASTERN DIVISION


JOSEPH A. BARKER, REGIONAL DIRECTOR )
OF REGION 13 OF THE NATIONAL LABOR )
RELATIONS BOARD, FOR AND ON BEHALF )
OF THE NATIONAL LABOR RELATIONS )
BOARD )            Civil No.  08 CV 2229
                                          )
                    **Petitioner**        )
                                          )     **Judge Grady**
        v.                                )     **Magistrate Judge  Cole**
                                          )
                                          )
REGAL HEALTH AND REHAB CENTER, INC. )
                    **Respondent**        )


CERTIFICATION OF COMPLIANCE WITH FEDERAL
RULE OF CIVIL PROCEEDURE RULE 26(c)
AND LOCAL RULE 37.1


This is to certify that Petitioner in this matter, through the undersigned counsel, in compliance with Federal Rule of Civil Procedure Rule 26(c) and Local Rule 37.2 has conferred with Respondent Counsel telephonically on May 14, 2008, at approximately 1:30 p.m., in an effort to informally settle a discovery dispute concerning the Respondent's proposed deposition of Regional Director Joseph A. Barker.  The parties have been unable to reach an agreement on the presentation of the Petitioner, Director Barker for a Deposition.


Dated at Chicago, Illinois this 16th day of May, 2008.


                                    */s/ Sylvia L. Taylor, filed electronically*____
                                    Sylvia L. Taylor
                                    Counsels for Petitioner
                                    National Labor Relations Board, Region 13
                                    209 South LaSalle, Suite 900
                                    Chicago, IL 60604
                                    (312)353-7617