UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH A. BARKER, REGIONAL DIRECTOR OF REGION 13 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD<br><br>Petitioner<br><br>v.<br><br>REGAL HEALTH AND REHAB CENTER, INC.<br><br>Respondent | Civil No. 08CV2229<br><br>Judge Grady<br><br>Magistrate Judge Cole |

### PETITIONER'S REPLY BRIEF IN SUPPORT OF MOTION TO QUASH RESPONDENT'S NOTICE OF DEPOSITION TO PETITIONER

**I.   INTRODUCTION**

On May 16, 2008, Petitioner filed a Motion to Quash Respondent's Notice of Deposition. Petitioner submits this additional reply brief to address the issues as raised by Respondent in its "Reponses to Petitioner's Motion to Quash Respondent's Notice of Deposition"[1] which Respondent filed on June 23, 2008.

On April 18, 2008, the Petitioner filed a Petition for Temporary Injunctive Relief pursuant to Section 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. Section 160(j), which is based upon a set of unfair labor practice charges filed against Respondent in NLRB Cases 13-CA-44481 and 13-CA-44482 pursuant to 29 U.S.C. Section 160(b). A hearing before an Administrative Law Judge of the National Labor Relations Board on the merits of these cases, along with related case 13-CA-44619, concluded on June 26, 2008. At the hearing, the parties had the opportunity to submit all evidence relevant to the administrative proceeding on the merits of the underlying unfair labor practice allegations and to present and cross-examine

---

[1] Herein referred to as "Respondent's Response".

witnesses. A full and complete transcript of these proceedings is currently available to all parties.[2]

## II.  CLARIFICATION OF CONTROLING AUTHORITY

In Respondent's Response, Respondent cites *NLRB V. Modern Drop Forge Co.*, 108 F.3d 1379, 1997 WL 120572 (7th Cir. March 14, 1997) (Table), an unpublished decision. After the Seventh Circuit issued *Modern Drop Forge*, that court decided *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. Aug. 15, 1997), cert. denied 522 U.S. 1110 (1998), where the plaintiff sought to depose the superintendent of the Chicago Police Department in connection with his suit challenging his discharge and alleging defamation. The district judge refused to permit the deposition until the plaintiff submitted written interrogatories that would indicate whether the deposition would serve a useful a purpose. In affirming the district court, the Seventh Circuit noted, "the superintendent of the Chicago police is a busy official who should not be taken away from his work to spend hours or days answering lawyer's questions unless there is a real need." 122 F.3d at 409 (citations omitted). Furthermore, public officials "should not have to spend their time giving depositions in cases arising out of the performance of their official duties unless there is some reason to believe that the deposition will produce or lead to admissible evidence." *Id.* at 409-10.

Thereafter, the panel of Judge Posner (who had written the decision in *Olivieri*), Judge Kanne (who had been on the panel in *Modern Drop Forge*), and Judge Coffey affirmed a district court's ruling that the Attorney General of Illinois did not have to attend a deposition in a suit alleging an unlawful discharge of a state employee for engaging in union activities. *Stagman v. Ryan*, 176 F.3d 986, 994-95 (7th Cir.), cert. denied 528 U.S. 986 (1999). Relying on *Olivieri*, the Seventh Circuit concluded that the district court had not abused its discretion in refusing to require the deposition.

Accordingly, the Seventh Circuit's unpublished decision in *Modern Drop Forge* has been superseded by its published decisions in *Olivieri* and *Stagman*, and is not controlling precedent

---

[2] A full and complete record of the administrative hearing, along with all exhibits was received in the Regional Offices on July 9, 2008.

in this District Court. Furthermore, *Olivieri* is virtually indistinguishable from the instant case. Thus, like the plaintiff there, the Respondent in this case has failed to provide any indication of the types of questions it would ask the Petitioner. Under these circumstances, the Petitioner, who "is a busy official ... should not be taken away from his work to spend hours or days answering lawyers' questions unless there is a real need." 122 F.3d at 409 (citations omitted).

In this case, there is no such "real need." All of the facts relevant to the likelihood of success issues are in the administrative record. As for the facts concerning the remaining issues, i.e., whether the petitioner has an adequate remedy at law and/or would be irreparably harmed if the injunction did not issue; whether the threatened injury to petitioner outweighs the threatened harm an injunction would inflict on defendant; and whether the granting of a preliminary injunction serves the public interest, *National Labor Relations Board v. Electro-Voice, Inc.*, 83 F. 3d 1559 (1996), cert. denied 519 U.S. 1055 (1997), the Petitioner has no first-hand knowledge. Accordingly, in view of the Respondent's failure to establish any need for his testimony, the Regional Director should not be required to attend a deposition.

### III. CLARIFICATION OF THE REGIONAL DIRECTOR'S VERIFICATION TO THE PETITION

In Respondent's Response, Respondent argues that the Petitioner attested that the facts alleged in the Petition are true and they are based on personal knowledge. Contrary to Respondent's assertions, Petitioner attested under oath that the statements in the petition that were made upon personal knowledge are true and those made upon information and belief, he believes to be true. As for the individual allegations, Petitioner never swore that he was an actor or participant in those events. Specifically, he states that:

> Petitioner asserts that there is a likelihood of success that the Regional Director will, in the underlying administrative proceeding in Cases 13-CA-44481 and 13-CA-44482, establish the following:

Petition (remaining paragraphs omitted).

3

Petitioner reiterates its position that the deposition of the Regional Director is not relevant to any issue in the 10(j) proceeding and cannot be said to produce or lead to any admissible evidence. As a Board official, he was **not** a witness to the events at issue in this case and does not have any first-hand knowledge of any relevant evidence which has not already been made, or will be made, available to Respondent.[3] See, e.g., *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586-587 (D.C. Cir. 1985). The Regional Director is an official of the Board whose participation in the case is merely to act on behalf of the Board. See *Gottfried v. Frankel*, 818 F.2d 485, 491-492 (6th Cir. 1987). On June 6, 2008, Respondent was presented with all relevant witness affidavits and all properly discoverable documentary evidence and exhibits in the Agency's possession obtained during the administrative investigation, which will be quite sufficient to enable Respondent to adequately prepare its defense in this proceeding. Additionally, Petitioner notes that a complete transcript of the administrative hearing along with all exhibits is currently available to Respondent. All of the evidence which the Board will consider in determining the merits of the unfair labor practice complaint is contained in the transcript and exhibits of the administrative hearing in which Respondent fully participated with the full opportunity to cross examine witnesses and review any statements by the witnesses made in the investigation of the unfair labor practice cases.

In view of the total absence of any relevant factual material to be discovered in the testimony of the Regional Director (*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978)), the only information which could be gained by Respondent's deposition would concern which specific facts adduced in the Board's investigation were relied upon, or not relied upon, by the Regional Director in reaching a decision to seek interim injunctive relief. It is inescapable that the deposition would then be seeking to elicit testimony regarding the Regional Director's impressions, opinions, and the weighing of evidence that is part of the Board's investigative and deliberative process. Such areas are not relevant to the issues before the Court. See, e.g., *NLRB v. Whittier Mills Co.*, 123 F.2d 725, 728 (5th Cir. 1941)(finding that Regional Director's beliefs

---

[3] Respondent seeks to question the veracity of Petitioner's verification because of Petitioner's admission that he was not an actor in the matters that led to the events that necessitated the filing of the Petition. The Regional Director is a busy public official who filed the Petition as mandated by statute. Petitioner finds it remarkable that Respondent is unaware that a high ranking member of the National Labor Relations Board was not frequently present in Respondent's facility from November 2007 – January 2008 and was not present when Respondent engaged in activity that is being alleged to violate the National Labor Relations Act.

are irrelevant to issues before court); *McLeod v. Local 239, Teamsters*, 330 F.2d 108, 112 (2d Cir. 1964)(Respondent "should have attempted to prove that reasonable cause to believe violation occurred did not exist, rather than seeking to psychoanalyze the regional director"). The courts that have passed on Section 10(j) and 10(l) petitions[4] have expressly declined to examine, and have refused to permit discovery of the processes by which the Board investigates and deliberates concerning the decision to institute preliminary injunction proceedings, because such matters are not relevant to the court's "just and proper" inquiry.  See, e.g., *Madden v. International Hod Carriers*, 277 F.2d 688, 693 (7th Cir.), *cert. denied* 364 U.S. 863 (1960)(affirming refusal to require testimony of Board agent regarding the Board's preliminary investigation and the decisional process in 10(l) proceeding).  Accord: *Building & Construction Trades Council v. Alpert*, 302 F.2d 594, 595-596 (1st Cir. 1962); *U.S. v. Electro-Voice, Inc.*, 879 F.Supp. 919, 923-924 (N.D. Ind. 1995); *D'Amico v. Cox Creek Refining Co.*, 126 F.R.D. 501, 505 (D. Md. 1989); *NLRB v. Trades Council*, 131 LRRM at 2023-24; *McLeod v. General Electric Co.*, 257 F. Supp. 690, 702 (S.D.N.Y. 1966), *rev'd on other grounds* 366 F.2d 847 (2d Cir. 1966), *stay granted* 87 S.Ct. 5 (1966) (J. Harlan), *vacated and remanded* 385 U.S. 533 (1967).

    IV.    <u>**INADEQUATE REMEDY AT LAW**</u>

In Respondent's Response, Respondent states that the NLRB has an adequate remedy at law.  Petitioner argues that there is no adequate remedy at law and the Board's administrative proceedings often are protracted, and, in many instances, absent interim relief, a respondent may accomplish its unlawful objective before being placed under any legal restraint and it would thereby render a final Board order ineffectual.  See S. Rep. No. 105, 80th Cong., 1st Sess. at pp. 8, 27 (1947), reprinted in *Legislative History of the Labor Management Relations Act of 1947*, 414, 433 (Government Printing Office 1985), cited in *NLRB v. P*I*E Nationwide, Inc.*, 894 F.2d 887, 891 (7th Cir. 1990).  As noted by the Seventh Circuit Court, Section 10(j) was intended to prevent the potential frustration or nullification of the Board's remedial authority caused by the passage of time inherent in Board administrative litigation.  *Kinney v. Pioneer Press*, 881 F.2d 485, 493-94 (7th Cir. 1989).  Likewise, without a preliminary injunction mandating that

---

[4] Section 10(l) of the Act, 29 U.S.C. § 160(l), is a companion provision to Section 10(j) that obligates the Board to seek temporary injunctions in cases involving certain violations of the Act committed by unions, such as secondary boycotts.

Respondent cease its unlawful activities and restore the status quo ante, the Union faces a long and difficult period trying to maintain their presence in this facility while the Board considers the consolidated complaint and representation proceedings. Injunctive relief is necessary to protect the unit employees' Section 7 right to select a bargaining representative so that, if the Board ultimately certifies the Union, it will be able to approach Respondent with the requisite employee support, in order to engage in meaningful collective-bargaining. See generally *Bordone v. Talsol Corp.*, 799 F. Supp. 796, 802 (S.D. Ohio 1992); *Pascarell v. Gitano Group, Inc.*, 730 F. Supp. 616, 624 (D. N.J. 1990).

      In the instant case, the Union was in the process of trying to obtain Board certification as the employees' bargaining representative when Respondent, by its illegal conduct abruptly terminated three union supporters from a unit consisting of only 13 employees. Obviously, if the Union is ultimately certified by the Board as the employees' bargaining representative, it will need the support of the employees it represents in order to bargain effectively for a first contract. See *Moore-Duncan v. Horizon House Developmental Services*, 155 F. Supp.2d 390, 396-397 (E.D. Pa. 2001)(without employee support, a union has little leverage and "will be hard-pressed to secure improvements in wages and benefits at the bargaining table"). But by the time the Board issues its final order in this case, the three terminated employees may become entrenched in the jobs that they have secured since their terminations, and, if they return after an extended absence, they may not be enthusiastic about resuming their union support. See *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 299 (7th Cir. 2001); *Pye v. Excel Case Ready*, 238 F.3d 69, 74-75 (1st Cir. 2001)("improperly discharged employees are likely to accept other jobs and find it difficult, if not impossible, to accept reinstatement"). Further, as time goes on and the terminated employees are absent from the facility, the other remaining employees will understand that maintaining union support may also result in their termination, and that neither the Union nor the Board can effectively protect them. See *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1573 (7th Cir.) ("[m]eanwhile, the employees remaining at the plant know what happened to the terminated employees, and fear that it will happen to them. The union's position in the plant may deteriorate to the point that effective organization and representation is no longer possible"), cert. denied 519 U.S. 1055 (1997); *Pye v. Excel Case Ready*, 238 F.3d at 74-75; *Silverman v. Whittal & Shon, Inc.*, 125 LRRM 2150, 2151 (S.D.N.Y. 1986).

Therefore, absent interim relief, the Board will have difficulty protecting employees' right to engage in union organizing activities free from coercion, restraint, interference by Respondent. More importantly, the Board's ultimate bargaining order will be unable to make employees whole for the deprivation of the benefits of good faith collective bargaining since they are deprived of their collective bargaining representative. This will ultimately lead to a loss of support for the union that can not be remedied by a final Board order on the merits. *Asseo v. Centro Medico del Turabo, Inc.*, 900 F.2d 445, 454 (1st Cir. 1992); *Dunbar v. Park Associates, Inc.*, 23 F. Supp. 2d 21, 218 N.D.N.Y. 1998), affd. mem 166 F.3d 1200 (2nd Cir. 1998); *Overstreet v. Tucson Ready Mix, Inc.*, 11 F. Supp. 2d 1139, 1148-1149 (D.Ariz. 1998).

## V. CONCLUSION

For all of the above reasons, Petitioner respectfully requests that Petitioner's Motion to Quash Respondent's Notice of Deposition of the Regional Director, Joseph A. Barker, be granted. In the alternative, Petitioner requests that the notice be corrected by Respondent to properly comply with Federal Rules.[5]

Dated at Chicago, Illinois, this 14th day of July, 2008.

/s/ Sylvia L. Taylor, filed electronically
Sylvia L. Taylor

/s/ Jessica Willis Muth, filed electronically
Jessica Willis Muth
Counsels for Petitioner
National Labor Relations Board, Region 13
209 S. LaSalle, Suite 900
Chicago, IL 60604
(312) 353-7617

---

[5] Should the deposition not be quashed, Petitioner will not agree to any deposition longer than "one day of seven hours" absent an order of the court, as required by Fed.R.Civ.P. 30(d)(2).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the attached **Petitioner's Reply Brief in Support of Motion to Quash Respondent's Notice of Deposition to Petitioner** have been served this 14th day of July, 2008 in the manner indicated below upon the following parties of record:

<u>Certified Mail</u>

Gem Healthcare
Attn: Michael Lerner
3553 W. Peterson Ave. #101
Chicago, IL 60659

Peter Andjelkovich & Associates
Attn: Peter Andjelkovich
39 S. LaSalle, Suite 200
Chicago, IL 60603

Asher, Gittler, Greenfield, Cohen & D'Alba Ltd.
Attn: Margaret Angelucci
200 W. Jackson Street, Suite 1900
Chicago, IL 60606

*/s/ Sylvia L. Taylor, filed electronically*
Sylvia L. Taylor

*/s/ Jessica Willis Muth, filed electronically*
Jessica Willis Muth
Counsels for Petitioner
National Labor Relations Board, Region 13
209 South LaSalle Street, Suite 900
Chicago, Illinois 60604
(312) 353-7617